Johnny MORALES, Appellant,

v.

ATTORNEY GENERAL OF TEXAS, Party Representing Interests of B.M.E., a Minor Child, Appellee.

No. 04–91–00662–CV.

Court of Appeals of Texas, San Antonio.

Sept. 30, 1992.

Ruperto Garcia, Austin, for appellant.

Leslie L. McCollom, Asst. Atty. Gen., Child Support Enforcement, Austin, for appellee.

Before PEEPLES, BIERY and GARCIA, JJ.

PEEPLES, Justice.

Johnnie Morales appeals a judgment declaring him the father of a child and ordering child support payments. He argues that the court had no authority to render a default judgment of paternity against him

when he refused to submit to a second round of paternity testing. We affirm the judgment.

The attorney general brought this paternity suit on behalf of the child's mother. Morales answered and denied paternity. Pursuant to family code § 13.02, the court ordered blood tests, which excluded 97.4% of the male Hispanic population as the child's father. *See* TEX.FAM.CODE ANN. § 13.02 (Vernon Supp.1992). When the court ordered DNA testing, Morales refused to participate. After a hearing, the court struck Morales's answer and then, after receiving additional evidence from the mother about Morales's paternity and financial ability, rendered a default paternity judgment.

■ Morales first argues that § 13.06(d) of the family code gave him the right to refuse testing and proceed to trial with the burden of proof. Section 13.06(d) provides that at trial one who refused testing bears the burden of proof:

> (d) A party who refuses to submit to paternity testing has the burden of proving that the alleged father is not the father of the child.

TEX.FAM.CODE ANN. § 13.06(d) (Vernon Supp.1992). But § 13.06 must be considered in light of § 13.02, which authorizes trial courts to decide paternity against a party who refuses to submit to blood tests. Section 13.02(b) provides:

> (b) An order issued under this section is enforceable by contempt, except that:
>
> (1) if the petitioner is the mother or the alleged father and refuses to submit to paternity testing, the court may dismiss the suit; or
>
> (2) *if any party refuses to submit to court-ordered paternity testing, upon proof sufficient to render a default judgment the court may resolve the question of paternity against that party.*

TEX.FAM.CODE ANN. § 13.02(b) (Vernon Supp.1992) (emphasis added). If § 13.06(d) stood alone, Morales's argument might be valid. But § 13.02(b)(2) clearly says that a trial court may adjudicate paternity against the litigant who refused testing if the other litigant makes proof that would justify a default judgment. Here the proof of paternity is clearly sufficient, and Morales does not contend otherwise.

■ This interpretation of the two sections does not, as Morales suggests, render § 13.06(d) meaningless. On the contrary, § 13.06(d) applies when the court has not exercised its power to decide paternity by default under § 13.02(b)(2). A court may, in its discretion, decide paternity against the party who refuses tests, when the evidence is sufficient. That is, a litigant who voluntarily frustrates the court's effort to obtain scientific evidence on the paternity issue risks an adverse decision by default. Whenever the court considers the evidence of paternity weak, it may in its discretion decline to decide the issue by default and proceed to trial. If and when the issue is tried, the party who refused testing will have the burden of proof.

■ Morales suggests that the court did not rest its paternity judgment on § 13.02, but on the provisions for discovery sanctions under TEX.R.CIV.P. 215. Though the court did use the words "sanctions" and "discovery" during the hearing, it is apparent from the proceedings that both the court and the attorney general relied in part on the family code. The order itself paraphrases § 13.02(b)(2),[1] a fact that strongly suggests the court was relying upon its provisions. And in any event, without findings of fact and conclusions of law, we must affirm the judgment upon any legal theory that finds support in the evidence. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278–79 (Tex. 1987); *In the Interest of W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984); *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). Any comments that the judge may have made from the bench cannot be substituted for findings of fact and conclusions of law. *In the Interest of W.E.R.,* 669 S.W.2d at 716.

1. The following language in the court's sanctions order is clearly a paraphrasing of § 13.-02(b)(2): "Therefore, sufficient evidence having been presented to the Court, the Court resolves the question of paternity against the Respondent."

We are told that a court acting under § 13.02 may not strike pleadings, and that a default judgment may not be rendered when there is an answer on file. This argument does not reckon with § 13.02(b)'s language authorizing the court to "resolve the question of paternity against the [noncomplying] party" if there is "proof sufficient" to justify a default judgment. In effect, § 13.02 authorizes a declaration of paternity regardless of the pleadings when a litigant refuses to participate in blood tests. It was therefore unnecessary to strike Morales's answer.

It is suggested that only one set of tests may be ordered, and that a court may not order a second round of testing when the first round proves somewhat indecisive. That notion is not warranted by the language of the statute, which says without limitation that the court may order blood tests. Our holding allows courts to order a less expensive, initial round of tests, and to order a second round if the first does not decide the issue. If the courts could order testing only once, it might become common for them to err on the side of thoroughness and order an entire set of tests, some of which might be unnecessary. The statute wisely authorizes testing step by step, and therefore when the preliminary tests are determinative, as they often are, the parties will not always have to pay for additional testing. Section 13.02 expressly authorizes a court to order tests $A$ and $B$, and then to cancel test $B$ if test $A$ proves conclusive.[2] We think the court may also order test $A$ and then later order test $B$ if the first test is inconclusive. The court did not err in ordering further tests.

The judgment is affirmed.

---

**2.** Section 13.02(a) says in part: "The court shall require in its order testing necessary to ascertain the possibility of the alleged father's paternity and shall require that the tests exclude at least 95 percent of the male population from the possibility of being the father of the child, except that the court shall permit the omission of any further testing if testing has been conducted sufficient to establish that the alleged father is not the father of the child, or if the costs of testing have reached an amount that the court determines to be the greatest amount that may reasonably be borne by one or more parties to the suit." Tex.Fam.Code Ann. § 13.02(a) (Vernon Supp.1992).